IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PASHA SAHAND TAVAKKOLI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-2202-N |
| | § | |
| J.S. HELWIG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendant J.S. Helwig & Son, LLC's ("Helwig & Son") motion for summary judgment [30]. The Court grants as to Plaintiff Pasha Sahand Tavakkoli's breach of contract claim requesting paid vacation, and denies the remainder of the motion.

## I. Origins of the Motion

This case arises from Tavakkoli's employment by Helwig & Son. Tavakkoli, a Muslim American of Iranian decent, began working for Helwig & Son, a trucking and transportation business, in 2014 as Director of Administration, with a salary of $80,000 a year. *See* App. to Mot. For Summ. J. Ex. 1 (hereafter "Helwig Decl."), ¶¶ 2, 6–8 [32]. Tavakkoli was responsible for recruiting truck drivers. *Id.* ¶ 9. Tavakkoli was hired, and later terminated, by J.S. Helwig, Sole Manager and President of Helwig & Son. *Id.* ¶¶ 2, 6, 11, 19. Tavakkoli claims Defendants promised him an additional $30,000 per year in three installments at six month intervals. *See* App. to Pl.s' Resp. Ex. 8 (hereafter "Tavakkoli Decl."), ¶ 3 [35-8]. Tavakkoli claims that Helwig & Son paid two of the $10,000

installments in cash, but not the third. *Id.* ¶ 4. Tavakkoli also claims Helwig & Son owes him for two weeks of earned vacation. *Id.* ¶ 5.

Tavakkoli claims that during his employment at Helwig & Son he faced regular racial and religious slurs, as well as derogatory comments from coworkers. *Id.* ¶¶ 7–11, 16, 18. Tavakkoli also claims his coworkers treated him poorly, which he believes was due to his race, color, religion, and national origin. *Id.* Specifically, Tavakkoli claims his coworkers were openly critical of his job performance, without good cause, and regularly delayed processing his driver applications in a timely manner. *Id.* at ¶ 15. Tavakkoli claims he confronted J.S. Helwig, about these incidents three times, and J.S. Helwig repeatedly acknowledged the conduct and asked Tavakkoli to rise above it. *Id.* ¶¶ 14, 20–21. Tavakkoli also claims J.S. Helwig himself made derogatory comments about Tavakkoli's national origin and religion, specifically, and used racial slurs in his presence. *Id.* ¶¶ 6–7, 17–18. J.S. Helwig denies making any comments about Tavakkoli's race, color, religion, or national origin. *See* Helwig Decl. ¶ 21. J.S. Helwig also denies that Tavakkoli reported any alleged harassment or remarks about his race, color, religion, or national origin to him or anyone else. *Id.* ¶ 22.

J.S. Helwig terminated Tavakkoli's employment at Helwig & Son in May 2015. *Id.* ¶ 16. J.S. Helwig claims he made the decision himself because of Tavakkoli's work performance. *Id.* ¶ 18–19. J.S. Helwig claims Tavakkoli had a pattern of aggressive behavior toward coworkers that culminated in an incident at a meeting in early May. *Id.* ¶¶ 11–12. In a report written a month after the meeting, and Tavakkoli's firing, Terry Fabian,

Vice President of Maintenance, claims Tavakkoli was aggressive and disrespectful toward him. *Id.* ¶ 12; *see also* App. to Mot. for Summ. J. Ex. 5, 15 [32]. Tavakkoli denies engaging "in such behavior warranting [his] dismissal." *Id.* ¶ 23.

Tavakkoli brought suit alleging discrimination, retaliation, and harassment under Title VII, as well as claims for breach of contract and quantum meruit against Helwig & Son and J.S. Helwig. Pl.'s Original Compl. ¶¶ 6.02–8.03 [1]. The Court previously dismissed Tavakkoli's Title VII and breach of contract claims against individual Defendant J.S. Helwig. *See* Order, February 16, 2017 [19]. The Court also dismissed Tavakkoli's age discrimination and quantum meruit claim against both Defendants. *Id.* Thus Tavakkoli's Title VII claims and breach of contract claim against Helwig & Son are the only remaining claims. Helwig & Son now moves for summary judgment on all claims. Tavakkoli opposes the motion.

## II. THE SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Helwig & Son objects to evidence presented in opposition to the motion for summary judgment. Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P.

56(c)(2). "[T]he admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial." *Pegram v. Honewell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (quoting *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995)).

First Helwig & Son objects to Tavakkoli's inclusion of exhibits two and three in his appendix to his response to the motion for summary judgment. These documents are the decision and opinion from Tavakkoli's case before the Texas Workforce Commission ("TWC"). *See* Def.'s Reply 2 [49]. Helwig & Son contends that the Texas Unemployment Compensation Act expressly states that documents from TWC rulings are not admissible in other proceedings. *See* TEX. LAB. CODE § 213.007. Helwig & Son is correct that "[u]nder Texas law, the Texas Workforce Commission's findings and conclusions may not be used as evidence in lawsuits, except for suits brought to enforce unemployment benefits." *Williams v. Aviall Servs. Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003) (unpub.). Accordingly, the Court sustains Helwig & Son's objections and will not consider these exhibits.

Helwig & Son also objects to exhibit 5, the unsworn, written statement of Tavakkoli's coworker John Powers as inadmissible hearsay. Because the Court may not consider unworn statements in the summary judgement context, the Court sustains the objection. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (noting that "[u]nsown statements are [] not appropriate for consideration" at summary judgment). Finally, the Court does not address Helwig & Son's objection to the photos attached to Tavakkoli's response as exhibit 6 as they are unnecessary to the resolution of the motion.

## IV. THE COURT GRANTS IN PART AND DENIES IN PART HELWIG & SON'S MOTION

### *A. The Court Grants In Part and Denies In Part the Defendant's Motion for Summary Judgment on Tavakkoli's Breach of Contract Claim*

Helwig & Son moves for summary judgment on Tavakkoli's breach of contract claim. Tavakkoli claims Helwig & Son breached its agreement to pay him an additional installment payment of $10,000 and for two weeks of vacation. Because Tavakkoli does not submit evidence to create an issue of fact as to his vacation pay breach of contract claim, the Court grants the motion for summary judgment as to the two week paid vacation claim. Because there is an issue of material fact as to the breach of contract claim regarding the installment payment, the Court denies the motion for summary judgment as to that claim.

"The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). According to Helwig & Son, Tavakkoli cannot establish the first element of a breach of contract claim because Tavakkoli cannot prove the existence of a valid contract to pay him the $10,000 installment payment or the two weeks of paid vacation. *See* Br. in Support of Mot. for Summ. J. 25 [31]. Helwig & Son provides evidence that J.S. Helwig did not promise to pay Tavakkoli any installment payments or paid vacation. *See* Helwig Decl. ¶¶ 7–8. Helwig & Son correctly points out that "under Texas law, 'vacation pay . . . [is] payable to an employee upon separation from employment only if a written agreement with the employer or a written policy of the employer specifically provides for payment.'" *Jenkins v. NTE Aviation Ltd.*, 2010 WL

609365, at *5 (N.D. Tex. 2010) (quoting 40 TEX. ADMIN. CODE § 821.25(a)) (alteration in original). Helwig & Son argues that neither Tavakkoli's offer letter nor the Helwig & Son Paid Time Off policy provide for payment of vacation upon termination. *See* App. to Mot. for Summ. J. Ex. 3, 11 (offer letter); *See* App. to Mot. for Summ. J. Ex. 4, 14 (paid time off policy). Tavakkoli does not present evidence to the contrary. Subsequently the Court grants summary judgment as to Tavakkoli's breach of contract claim premised on the unpaid vacation days.

As for the installment payments, Tavakkoli claims that Helwig & Son agreed to pay him the additional installment payments of $10,000 every six months. *See* Tavakkoli Decl. ¶ 3. Tavakkoli also asserts that Helwig & Son did in fact pay him two of the $10,000 installment payments. *Id.* ¶ 4. Thus Tavakkoli creates an issue of material fact, that is whether Helwig & Son agreed to pay him the $10,000 installments and the Court denies the motion for summary judgment as to his breach of contract claim regarding the installment payments.

### *B. The Court Denies Defendant's Motion for Summary Judgment on Tavakkoli's Discrimination Claim*

Helwig & Son also moves for summary judgment on Tavakkoli's discrimination claim. According to Helwig & Son, there is no genuine dispute of material fact as to Tavakkoli's discrimination claim because he has not established a prima facie case. Helwig & Son further maintains that even if Tavakkoli established a prima facie case of discrimination, they have a legitimate, nondiscriminatory, nonretaliatory reason for terminating Tavakkoli's employment. Finally Helwig & Son argues that Tavakkoli has not

presented evidence sufficient to establish an issue of material fact as to whether the proffered nondiscriminatory reason was pretext.

Tavakkoli established a prima facie case of discrimination. To establish a prima facie case of discrimination, a plaintiff must establish "(1) [he] is a member of a protected class, (2) [he] was qualified for [the] position, (3) [he] suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). Helwig & Son claims Tavakkoli fails to establish element four, that he was treated less favorably. *See* Br. in Support of Mot. for Summ. J. 14. But Tavakkoli presented evidence of similarly situated employees of different national origins, races, colors, and religions that were treated more favorably. Tavakkoli identifies six other managers that he argues were treated more favorably. *See* Tavakkoli Decl. ¶ 14, 20–21. Helwig & Son's disagreement with Tavakkoli's evidence does not defeat Tavakkoli's prima facie case. *See Bienkowski*, 851 F.2d at 1507 (reversing summary judgment where competing affidavits and disagreement over employee's performance created a jury issue of intentional age discrimination).

Because Tavakkoli produces evidence sufficient to establish his prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to show "(1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating

factor' is the plaintiff's protected characteristic." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Helwig & Son argues that it had a legitimate, nondiscriminatory reason for the adverse action. Helwig & Son claims it terminated Tavakkoli because of his behavior, specifically aggressive behavior at an employee meeting, shortly before he was terminated. *See* Helwig Decl. ¶¶ 11–16. Helwig & Son also argues it reasonably relied upon a complaint filed by Terry Fabian, Vice President of Maintenance, that detailed Tavakkoli's behavior at the meeting. *Id.* ¶ 12–16. Fabian reported that he asked Tavakkoli to make sure new drivers understood they may be assigned trucks without refrigerators. *See* App. to Mot. for Summ. J. Ex. 5, 15 [32]. Fabian's report claims Tavakkoli then became very agitated and condescending until Fabian ended the meeting fifteen minutes later. *Id.* J.S. Helwig claims he relied upon this complaint, and his concern that Tavakkoli was "misleading the driver recruits about the refrigerators" when making the decision to terminate Tavakkoli. *See* Helwig Decl. ¶ 16.

Tavakkoli claims this reason is pretextual. Summary judgment is inappropriate if Tavakkoli "produce[s] evidence, or [relies] on evidence already produced, that refutes or contests [Helwig & Son's] evidence of a legitimate, nondiscriminatory reason." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236–37 (5th Cir. 2016). "A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."' *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). As a threshold matter, the Court notes Helwig & Son did not produce much

evidence of their legitimate, nondiscriminatory reason for firing Tavakkoli. *See Heinsohn*, 832 F.3d at 237 ("As a preliminary observation, there is little for [plaintiff] to refute or contest . . . . [as defendant] produced only scant evidence of a legitimate, nondiscriminatory reason for firing [plaintiff]."). Here, Helwig & Sons only submits J.S. Helwig's affidavit, signed a year after the incident, and a typed letter from Fabian reporting about the May meeting, that is dated June 3, 2015. *See* Helwig Decl. ¶¶ 14–16; App. to Mot. for Summ. J. Ex. 5, 15. Helwig & Son submits no contemporaneous evidence of its reason for terminating Tavakkoli, such as documentation of the incident at the meeting or a termination letter. *See Evans v. City of Houston*. 246 F.3d 344, 355 (5th Cir. 2001) (noting that where there is "no *contemporaneous* evidence in the record" and "[a]ll of the evidence of disciplinary problems comes from memoranda or depositions written or taken after" the adverse employment action, there is not sufficient evidence to justify an adverse employment action because of disciplinary problems) (emphasis in original). Nor does Helwig & Son present evidence of prior incidents and counseling J.S. Helwig had with Tavakkoli about his aggressive behavior. This dearth of evidence is not fatal to Helwig & Son's proffered nondiscriminatory reason for firing Tavakkoli. But because Helwig & Son does not produce significant evidence of a legitimate, nondiscriminatory reason for firing Tavakkoli, there is little for Tavakkoli to dispute to survive summary judment. *See Heinsohn*, 832 F.3d at 237.

Tavakkoli claims he "did not engage in such behavior." Tavakkoli's Decl. ¶ 23. The Court notes that Tavakkoli's affidavit alone, is not enough, to create a factual issue as to whether Helwig & Son's proffered reason was pretextual. *See Jackson*, 602 F.3d at 379

("[Plaintiff's] self-serving statements that he did not commit sexual harassment are insufficient to create a triable issue of fact as to whether [Defendant] fired him because of his age."). As Helwig & Son correctly points out "[i]n cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Id.* (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)). But unlike the cases cites by Helwig & Son, there is no evidence that J.S. Helwig, or anyone within Helwig & Son, did any investigation or looked into the events of the meeting such that relying on Fabian's report was reasonable. Also Fabian's written report is dated in June, a month after Tavakkoli's termination. Nor does J.S. Helwig discuss any details about any previous counseling he provided to Tavakkoli about his behavior at work.

Here, Tavakkoli presents sufficient circumstantial evidence of discrimination to create a fact issue as to the credibility of Helwig & Son's nondiscriminatory reason for firing him. Tavakkoli claims J.S. Helwig made several comments evidencing a discriminatory animus. "Statements may be used to demonstrate pretext when they 'first, demonstrate discriminatory animus and, second [are] made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker.'" *Quintana v. Fujifilm N. Am. Corp.*, 96 F. Supp. 3d 601, 618 (N.D. Tex. 2015) (quoting *Laxton*, 333 F.3d at 583). Tavakkoli claims J.S. Helwig, the person primarily responsible for his termination, made several comments evidencing a discriminatory animus. *See* Tavakkoli

Decl. ¶ 7 (claiming J.S. Helwig stated Muslims are ruining the country); *id.* ¶ 18 (claiming J.S. Helwig stated "how dare they (Muslims) go to Austin and create such a mess. Don't they know they are not wanted here?"); *id.* ¶¶ 6, 17 (claiming J.S. Helwig used racial slurs). Based on the forgoing evidence, a reasonable juror could infer that Hewlig & Son's explanation for Tavakkoli's termination, his aggressive behavior, was pretextual. Because there is evidence sufficient to create a genuine issue of material fact as to whether Helwig & Son's proffered explanation was pretext, summary judgment is inappropriate.

### *C. The Court Denies Defendant's Motion for Summary Judgment on Tavvakoli's Retaliation Claim*

Helwig & Son also moves for summary judgment on Tavakkoli's retaliation claim. According to Helwig & Son, there is no genuine dispute of material fact as to Tavakkoli's retaliation claim and summary judgment is proper. Specifically, Helwig & Son claims Tavakkoli cannot establish he engaged in a protected activity or that there was a causal link between his termination and any protected activity. Helwig & Son also argues that if Tavakkoli has established a prima facie case, he has not produced evidence sufficient to create a genuine issue of material fact as to pretext.

To establish a prima facie claim of retaliation, a plaintiff much establish "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). If a Plaintiff does so, "the burden then shifts to the defendant to proffer a legitimate rationale

for the underlying the employment action." *Id.* As is the case in discrimination cases under Title VII, to survive a motion for summary judgment, a plaintiff "must raise a genuine issue of material fact as to whether this explanation is merely pretext, such that a reasonable fact-finder could infer discrimination." *Woodson v. Scott & White Mem'l Hosp.*, 255 F. App'x 17, 20 (5th Cir. 2007). "A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (citations omitted).

Helwig & Son first argues Tavakkoli did not engage in a protected activity. Tavakkoli claims he complained to J.S. Helwig about the discriminatory treatment and hostile work environment at least three times. *See* Tavakkoli Decl. ¶¶ 14, 20–21. Under Helwig & Son's EEO Policy, reporting the alleged harassment or discriminatory activity to J.S. Helwig is sufficient to comply with the complaint procedure. *See* App. to Mot. for Summ. J. Ex. 1, 7–9 [32]. Helwig & Sons argues that Tavakkoli "never made any complaint or report of harassment, remarks, or comments about his race, color, religion or national origin to either J.S. Helwig or to anyone else at Helwig & Son." Br. in Support of Mot. for Summ. J. 16. Again, disagreement with Tavakkoli's evidence does not defeat Tavakkoli's prima facie case. *See Bienkowski*, 851 F.2d at 1507. Next, Helwig & Son argues Tavakkoli did not establish a causal link between his termination and his complaint to J.S. Helwig. As a threshold issue, and as the Court noted in its previous Order, Tavakkoli asserts a close temporal proximity between his complaints to Mr. Helwig and his dismissal. *See McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) ("Close timing between an employee's

protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). Tavakkoli does not solely rely on temporal proximity alone to establish a causal link. Tavvakoli alleges J.S. Helwig made several comments indicating a dislike for Muslims. *See* Tavakkoli Decl. ¶¶ 7, 18. These allegations, along with the temporal proximity, is sufficient to establish a prima facie case of retaliation.

Helwig & Son again argues Tavakkoli has not produced evidence sufficient to create a genuine issue of material fact as to pretext. As discussed above, a reasonable juror could infer Helwig & Son's explanation for Tavakkoli's termination, his aggressive outburst, was pretextual based on the evidence Tavakkoli submitted. *See supra* Part IV.B. Thus summary judgment is inappropriate.

### *D. The Court Denies Defendant's Motion for Summary Judgement on Tavakkoli's Hostile Work Environment Claim*

Finally Helwig & Son moves for summary judgment on Tavakkoli's hostile work environment claim.[1] To establish a hostile work environment claim under Title VII, a plaintiff must prove that he

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [race, religion, color, or national origin]; (4) the harassment complained of affected a term, condition,

---

[1] The Court notes Tavakkoli distinguishes between his harassment and hostile work environment claims. Under Title VII, harassment becomes unlawful where it creates a hostile work environment. Accordingly, Tavakkoli's claim for harassment is actionable under the hostile work environment theory. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

> or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). According to the Helwig & Son, Tavakkoli cannot establish elements two through five of his claim.

First, Helwig & Son contends Tavakkoli cannot prove he was subjected to harassment based on his protected status. Tavakkoli claims he was harassed on a regular basis in the workplace as a result of his race, religion, and national origin. *See* Tavakkoli Decl. ¶ 9 ("There was virtually not a day where I didn't overhear a derogatory remark about my background from Accounting and Safety."). Tavakkoli also describes specific instances where his coworkers made disparaging comments about his race, religion, and national origin in his presence, which he subjectively interpreted as hostile. *See, e.g.*, Tavakkoli Decl. ¶ 8 ("I extended [my] hand to shake hers. She looked at me and said 'I haven't decided if I am going to shake a Muslim's hand yet.'"). Tavakkoli also describes incidents where J.S. Helwig made comments or remarks about Tavakkoli's religion, contrary to the Defendant's assertion otherwise. Because there is a genuine dispute as to a material fact here, summary judgment is inappropriate.

Second, Helwig & Son argues Tavakkoli's alleged harassment did not affect a term, condition, or privilege of employment. Harassment affects a term, condition, or privilege of employment only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268

(citing *Harris*, 510 U.S. at 21). While no factor is determinative, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510 U.S. at 23). The "'mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee[]' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, (1986)) (internal citation omitted). Rather, Title VII bars only conduct that is both subjectively and objectively hostile. *Id.*

Tavakkoli claims his coworkers made several offensive comments about his national origin, race, and religion over the course of his employment at Helwig & Son, which lasted less than a year. Tavakkoli claims this humiliating conduct towards him began on his first day and continued on a regular basis. *See, e.g.*, Tavakkoli Decl. ¶ 9 ("There was virtually not a day where I didn't overhear a derogatory remark about my background from Accounting and Safety[.]"). Tavakkoli also alleges that the conduct of his coworkers toward him made it more difficult for him to do his job. *Id.* ¶¶ 15–16 (noting incidents with coworkers in the Safety Department that led to delays in Tavakkoli's driver applications and even eventually compelled Tavakkoli to bypass the Safety Department for approval by J.S. Helwig). The Court concludes that considering the totality of the circumstances, including the regular offensive comments about Tavakkoli's race, religion, and national origin,

allegedly starting on Tavakkoli's first day of employment, over the course of a year are sufficient to create a fact issue to prevent summary judgment.

Finally, as noted above, the Defendant claims that it was unaware of anyone at the company engaging in any harassing conduct. *See* Helwig Decl. ¶ 21. Tavakkoli claims he informed J.S. Helwig of the harassment, which J.S. Helwig denies. Accordingly there is a genuine issue of material fact such that summary judgment is inappropriate.

***E. The Court Denies Defendant's Motion for Summary Judgement on Tavakkoli's Damages Claims***

Finally, Helwig & Son seeks summary judgment on Tavakkoli's damages on two grounds. First, Helwig & Son claims Tavakkoli's back pay claim is limited from May 2015 to December 2015, when Tavakkoli began earning allegedly higher wages at his new job. The Court denies summary judgment on this ground as it is predicated on Helwig & Son's argument that Tavakkoli's base pay was $80,000 rather than the $110,000 that Tavakkoli claims. Because there is an issue of material fact as to the amount of Tavakkoli's compensation, the Court denies summary judgment on this ground. Second, Helwig & Son seeks summary judgment on Tavakkoli's compensatory damages for emotional distress. Because Tavakkoli has submitted sufficiently detailed evidence as to his mental anguish, which Helwig & Son has not refuted, the Court denies summary judgment on this ground.

## CONCLUSION

For the forgoing reasons, the Court grants Helwig & Son's motion for summary judgment as to the breach of contract claim predicated on the paid vacation days. The Court denies the remainder of the motion.

Signed June 20, 2017.

David C. Godbey
United States District Judge